# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK FEHILY and DAVID T. MALLEY, | No._____ |
| Plaintiffs, | **Complaint for Declaratory and Injunctive Relief** |
| v. | |
| JOSEPH R. BIDEN JR., in his official capacity as President of the United States; GINA RAIMONDO, in her official capacity as Secretary of the United States Department of Commerce; and DEB HAALAND, in her official capacity as Secretary of the United States Department of the Interior, | |
| Defendants. | |

Jonathan Houghton, Pacific Legal Foundation, 3100 Clarendon Blvd., Suite 610, Arlington, VA 22201, for Plaintiffs.

Plaintiffs Patrick Fehily and David T. Malley, by their attorney, Jonathan Houghton of Pacific Legal Foundation, allege the following:

## INTRODUCTION

1.     Plaintiffs Patrick Fehily and David T. Malley bring this action challenging the Presidential Proclamation of Defendant Joseph R. Biden,

Jr., designating the Northeast Canyons and Seamounts Marine National Monument under the Antiquities Act of 1906 ("Antiquities Act or Act"). *See* Presidential Proclamation No. 10287, 86 Fed. Reg. 57,349 (Oct. 8, 2021).

2.      Plaintiffs Mr. Fehily and Mr. Malley are commercial fishermen who earn their living through the Atlantic Ocean's fisheries. Both have invested heavily in commercial fishing vessels and permits that allow them to ply their trade in the waters of the Atlantic Ocean.

3.      Mr. Fehily started working on a fishing vessel in high school and has developed a deep appreciation for the fishing profession. After working in the industry for several years, he bought his own vessels and now owns four boats that currently fish for scallops, tuna, and swordfish.

4.      Mr. Malley has worked in the fishing industry for over 50 years and recently bought his own fishing vessel to supplement his income during retirement. In doing so, he has spent hundreds of thousands of dollars preparing his vessel to be able to fish for tuna and swordfish in the Atlantic.

5.      But on October 8, 2021, the President issued Proclamation 10287 designating the Northeast Canyons and Seamounts Marine

National Monument ("Monument Designation") under the Antiquities Act, closing off a vast area of the Atlantic Ocean to commercial fishing and threatening these fishermen's way of life.

6.     Proclamation 10287 declares as a national monument approximately 5,000 square miles (3.2 million acres) of the Atlantic Ocean's "Exclusive Economic Zone" (EEZ)—an ocean belt beyond the territorial seas between 12 and 200 nautical miles off the Nation's coasts.

7.     Proclamation 10287 includes not only physical canyons and seamounts as part of the Monument Designation, but also cites "ecosystems" and "biodiversity" within them as protectable "objects of historic or scientific interest" under the Act.

8.     The Proclamation also bans or phases out commercial fishing within the Monument Designation's waters—waters that have been an important commercial fishery for decades—preventing fishermen like Mr. Fehily and Mr. Malley from using the fishery's resources within the designated area to practice their trade.

9.     Proclamation 10287 exceeds the President's authority under the Antiquities Act and violates the Constitution's Separation of Powers.

10.     First, the Act delegates the President limited authority to designate national monuments on "land" owned or controlled by the Federal Government. 54 U.S.C. § 320301(a). But Proclamation 10287 designates a national monument in an area of the Atlantic Ocean that is not on "land" under the Act. When Congress enacted the Antiquities Act in 1906, an ocean's seabed or floor was not understood to be "land" as that term is used within the statute.

11.     Second, the Act also limits the President's authority to declare national monuments on lands "owned or controlled by the Federal Government." *Id.* Yet the portion of the Atlantic Ocean within the EEZ is not "owned or controlled by the Federal Government" under the Act's ordinary meaning. The Federal Government enjoys limited authority to regulate within the EEZ, which does not constitute "control" under the Act.

12.     Third, the President may only designate as national monuments "historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest[.]" *Id.* But "ecosystems" and the "biodiversity" contained within them are not "objects" that he can designate as, or as part of, a national monument. The Act's language,

"objects of historic or scientific interest," follows "historic landmarks" and "historic and prehistoric structures." This language's ordinary meaning shows that Congress sought to protect discrete physical "objects of antiquity"—not amorphous ecosystems or the biodiversity within them.

13.    Fourth, the Act also delegates to the President authority to reserve "parcels of land" as part of a national monument but limits that authority by mandating that the reserved land "shall be confined to the smallest area compatible with the proper care and management of the objects to be protected." *Id.* § 320301(b). Because "ecosystems" and the "biodiversity" contained within them are not "objects" protectable under the Antiquities Act, the Monument Designation's area is not "confined to the smallest area compatible with the proper care and management of the objects to be protected." Once these unprotectable objects are excised from the Monument Designation, the Proclamation's designation of a national monument encapsulating vast areas of the Atlantic Ocean's seabed or floor—outside the designated physical canyons and seamounts—is ultra vires. The Proclamation is also ultra vires because it offers conclusory factual justifications for the Monument Designation's size based on the "ecosystems" to be protected.

14.    Finally, even if the Monument Designation is within the President's authority, Congress did not delegate to the President the power to ban commercial fishing under the Antiquities Act. The Act's delegation limits the President's authority to declare a national monument and to reserve parcels of lands to be part of a monument; it does not give the President authority to make legislative rules for the "proper care and management" of a national monument. Congress charged the Secretary of Interior, Secretary of Agriculture, and Secretary of the Army—not the President—with making and publishing uniform regulations to implement the Act. 54 U.S.C. § 320303. Thus, by banning commercial fishing within the Monument Designation, the President has acted with no delegated authority from Congress and has made law in violation of the Constitution's Separation of Powers.

15.    Plaintiffs Mr. Fehily and Mr. Malley thus seek declaratory and injunctive relief.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction under 28 U.S.C. § 1331 (subject matter); § 2201 (declaratory relief); and § 2202 (injunctive relief).

17.    This Court can award costs and attorneys' fees under 28 U.S.C. § 2412.

18.    Venue is proper in this Court under 28 U.S.C. § 1391(e)(1) because a substantial part of the events giving rise to the claim occurred within this judicial district, Plaintiff Patrick Fehily resides in this judicial district, and no real property affects the action.

## PARTIES

### *Plaintiffs*

19.    Plaintiff Patrick Fehily is a commercial fisherman who resides in the State of New Jersey and has plied his trade in the Atlantic Ocean's waters for over a decade.

20.    He owns and operates permitted commercial fishing vessels that participate in the Atlantic Ocean fisheries including—before Proclamation 10287's ban on commercial fishing—within the Monument Designation's waters.

21.    Proclamation 10287's ban on commercial fishing within these waters has limited, and will continue to limit, Mr. Fehily's ability to participate in the fishery within the Monument Designation's waters.

22.     Plaintiff David T. Malley is a commercial fisherman who resides in the Commonwealth of Massachusetts and has worked in the fishing industry for over 50 years.

23.     He owns and operates a commercial fishing vessel that would participate in the fishery within the Monument Designation's waters but for Proclamation 10287's ban on commercial fishing.

24.     Neither Plaintiff Mr. Fehily nor Plaintiff Mr. Malley have been a party to any lawsuit challenging a Presidential Proclamation issued under the Antiquities Act.

25.     Neither Plaintiff Mr. Fehily nor Plaintiff Mr. Malley have been a member of any organization that has challenged a Presidential Proclamation issued under the Antiquities Act.

*Defendants*

26.     Defendant Joseph R. Biden Jr. is the President of the United States. He is sued solely in his official capacity. In that capacity, he issued Proclamation 10287 which is the federal action challenged in this suit.

27.     Defendant Gina Raimondo is the Secretary of the United States Department of Commerce and is charged with administering Proclamation 10287. She is sued solely in her official capacity.

8

28.     Defendant Deb Haaland is the Secretary of the United States Department of Interior and is charged with administering Proclamation 10287. She is sued solely in her official capacity.

## LEGAL BACKGROUND

### The Antiquities Act

29.     Congress's goal in enacting the Antiquities Act was to establish a method for protecting ancient and prehistoric Native American archeological sites on federal lands from theft and destruction. *See* Ronald F. Lee, *The Antiquities Act, 1900-06*, *in The Story of the Antiquities Act* (2019), https://www.nps.gov/articles/lee-story-antiquities.htm. Congress thus delegated the President limited authority to establish national monuments on certain lands owned or controlled by the Federal Government.

30.     The Antiquities Act's text can be broken down, as relevant here, into a delegation with five "discernible limits" on the President's power to declare monuments. *See Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136–37 (D.C. Cir. 2002) (finding that judicial review is available to ensure the President has not exceeded his authority under

the Antiquities Act). Courts are "obligated to determine whether statutory restrictions have been violated." *Id.*

31.    First, these objects must be "situated on land" as that term is used under the Antiquities Act. 54 U.S.C. § 320301(a). Consistent with Congress's purpose of protecting historic Native American artifacts, this phrase includes Native American lands and federal territories. For example, most of the Southwest in 1906, where many objects of antiquity were located, was Native American land or federal territory.

32.    Second, this "land" must be those "owned or controlled by the Federal Government." *Id.* The Antiquities Act thus does not authorize the President to designate monuments on privately owned land. Nor may a monument be designated beyond the Nation's territory, such as the high seas. *Cf. Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 569 F.2d 330, 337–40 (5th Cir. 1978) (holding that the Antiquities Act does not apply to a shipwreck beyond the Nation's territorial sea).

33.    Third, the President can declare as national monuments only "historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest." 54 U.S.C. § 320301(a).

10

34.    Fourth, the President can reserve public lands to protect a national monument. *Id.* § 320301(b). But that reservation must be "confined to the smallest area compatible with the proper care and management of the objects to be protected." *Id.*

35.    Finally, the statute directs the agencies that manage a monument, not the President, to issue uniform rules and regulations to carry out the Act's purposes. *Id.* § 320303. In other words, the Act limits the President's authority to declare only what will be a national monument and what land is required for the proper care and management of the objects to be protected. *See* 54 U.S.C. § 320301(a)–(b). Congress authorized certain agency heads to determine how the objects are to be protected through regulations. *See id.* § 320303.

## Federal Authority Over
## the Exclusive Economic Zone (EEZ)

36.    In 1906, the United States' territorial reach extended only three miles off the coast—the limits of the territorial sea. Beyond that was the high seas, which were international waters. Decades later, by proclamation, President Reagan asserted that the territorial sea extends up to 12 miles off the coast. *See United States v. Alaska*, 521 U.S. 1, 8–9 (1997).

37.     President Reagan also issued a proclamation establishing an EEZ up to 200 miles from the Nation's coasts, 48 Fed. Reg. 10,605 (Mar. 10, 1983), but recognized that federal authority over this area is limited. *See* Statement on United States Oceans Policy, 1 Pub. Papers of Ronald Reagan at 379 (Mar. 10, 1983).

38.     Congress recognizes that the Federal Government has limited authority to regulate within the EEZ. For example, the Magnuson-Stevens Fishery Conservation and Management Act (commonly known as the Magnuson-Stevens Act), regulates fishing in the EEZ while "maintain[ing] without change" the government's limited authority over this zone "for all [other] purposes." 16 U.S.C. § 1801(c)(1).

39.     Congress has also qualified the power delegated under the National Marine Sanctuaries Act by acknowledging the Federal Government's limited authority beyond the territorial sea. *See* 16 U.S.C. § 1435(a).

40.     International law, too, recognizes that Nations enjoy limited regulatory authority over the EEZ and do not have the level of sovereignty they enjoy within their territories. *See* Restatement (Third)

of Foreign Relations Law § 514 cmt. c (1987); *see also* The United Nations

Convention on Law of the Sea art. 58 § 2.

## Federal Regulation of Ocean Fisheries

41.    Since 1906, Congress has exercised its limited authority to

regulate the EEZ to protect the environment by adopting statutes

specifically directed to this area of the ocean and establishing procedures

to protect against excessive limitations on its sustainable and productive

use.

42.    In 1972, Congress adopted the National Marine Sanctuaries

Act, which aims to protect the EEZ's sensitive areas when the United

States has the power to do so. *See* 16 U.S.C. §§ 1431–1445b. This statute

permits the Secretary of Commerce to designate marine sanctuaries

within the EEZ based on twelve factors explicitly set out in the statute

and only after providing notice to the public and consultation with state

regulators. 16 U.S.C. §§ 1433–1434. If a marine sanctuary is established,

the Regional Fishery Management Council established by the Magnuson-

Stevens Act has the authority to regulate fishing as needed to protect the

marine sanctuary. 16 U.S.C. § 1434(a)(5). The statute encourages all

public and private uses of the resources in a marine sanctuary that are compatible with the sanctuary's protection.

43.     In 1976, Congress enacted the Magnuson-Stevens Act. 16 U.S.C. § 1801, *et seq*. This is the primary law governing fisheries management in the EEZ. The statute is administered by eight regional fishery management councils, which must include representatives of federal and state agencies as well as the fishing industry. Under the Magnuson-Stevens Act, the regional councils, working with the National Marine Fisheries Service (which is within the Department of Commerce), prepare an annual stock assessment for each species commercially harvested in a fishery. If that assessment shows that a species is being overfished, the regional council sets an annual catch limit. Nearly 90% of fisheries managed under the Magnuson-Stevens Act enjoy healthy, sustainable harvest levels below their annual catch limits.

44.     The regional councils also reduce fishing's effects on ecosystems and incidental bycatch by regulating the gear used to fish.

45.     Unlike the Antiquities Act, the National Marine Sanctuaries Act refers to the "territorial sea . . . which is subject to the sovereignty of the United States" and "the [EEZ]," which is subject to "international

law," rather than "lands owned or controlled" by the Federal Government. *See* 16 U.S.C. § 1437(k). Nor does the Magnuson-Stevens Act refer to "lands owned or controlled" by the Federal Government. Rather, it refers to the "EEZ" throughout the statute. *See* 16 U.S.C. § 1801, *et seq*. Together, these statutes tailor the degree of environmental protection to the limited authority the Federal Government enjoys over the EEZ.

## FACTUAL ALLEGATIONS

### Georges Bank Fishery

46.     The Georges Bank is an elevated area of sea floor off the eastern seaboard that separates the Gulf of Maine from the Atlantic Ocean.

47.     Like much of the continental shelf off the United States' East Coast, the Georges Bank's edge is pockmarked by underwater canyons.

48.     For centuries, the Georges Bank has supported lucrative fisheries. The iconic fishing communities of New England and throughout the East Coast sprang up because of the value of these fisheries.

49.     Today, this area still supports significant fisheries for various species of fish and shellfish. These fisheries provide an important source

of income and employment for fishermen throughout the northeast, including Plaintiffs Mr. Fehily and Mr. Malley.

50.    Beyond Georges Bank lie several seamounts rising from the ocean floor.

51.    Deep-sea coral grows on both the canyons and seamounts.

52.    Fishermen are careful to avoid areas where coral is present because it severely damages their gear, costing the fishermen more than any benefit that could be obtained from fishing in the area.

**Existing Management of the Georges Bank**

53.    The New England Fishery Management Council manages the Georges Bank fishery, along with the National Marine Fisheries Service, under the Magnuson-Stevens Act. Since that statute was enacted, the Council has worked with industry, state and federal government, and nongovernment organizations to improve sustainability of the fishery. These efforts have included extensive regulation by the National Marine Fisheries Service of the equipment and methods the fishermen use to catch fish, and on the number of fish that can be caught within the fishery.

54.     The Atlantic States Marine Fisheries Commission manages lobster fishing in the Georges Bank under an interstate compact. It too has worked with industry, state and federal government, and nongovernmental organizations to improve sustainability. Working with several industry organizations, the Commission has retired traps to reduce pressures on lobster stocks. These efforts have been successful at producing a record abundance of lobster in Georges Bank and the Gulf of Maine.

### President Obama Establishes the Northeast Canyons and Seamounts Marine National Monument: Presidential Proclamation 9496

55.     Before leaving office in 2016, President Obama issued a proclamation declaring the first iteration of the Northeast Canyons and Seamounts Marine National Monument. *See* Presidential Proclamation No. 9496, 81 Fed. Reg. 65,161 (Sept. 15, 2016) (Ex. A).

56.     The proclamation described the monument as consisting of two units: a Canyons Unit that included three large and two small underwater canyons covering nearly 1,000 square miles (around 640,000 acres) of ocean, and a Seamounts Unit that included four seamounts

(underwater mountains) covering nearly 4,000 square miles (around 2.56 million acres) of ocean. 81 Fed. Reg. at 65,161–62.

57.   The proclamation also asserted that the canyons and seamounts, and the natural resources and ecosystems in and around them, are "objects of historic and scientific interest" justifying the monument's designation. 81 Fed. Reg. at 65,161.

58.   The three underwater canyons start at the edge of the continental shelf and drop thousands of meters to the ocean floor. The proclamation noted that deep-sea corals live in the canyon and form the foundation of a deep-sea ecosystem. The steep sides of the canyons concentrate phytoplankton, which draws fish, whales, and other ocean species. 81 Fed. Reg. at 65,161–62.

59.   The four seamounts are part of a larger seamount chain formed by extinct volcanoes. The seamounts also support deep-sea coral and several ecosystems. 81 Fed. Reg. at 65,162.

60.   The proclamation also asserted that the ecosystems in the huge area around the canyons and seamounts have drawn scientific interest. The ecosystem includes sharks, whales, turtles, and many highly migratory fish. 81 Fed. Reg. at 65,162–63.

61.     The proclamation gave no factual justification for why this huge section of the ocean is "land owned or controlled" by the Federal Government. Instead, it simply asserted that protecting the marine environment is in the public interest. 81 Fed. Reg. at 65,163.

62.     The proclamation likewise failed to explain why this roughly 5,000 square-mile (3.2 million acre) area is the smallest area compatible with protecting the monument. *See* 81 Fed. Reg. at 65,163.

63.     Nor did the proclamation provide any factual justification, other than conclusory statements, for how commercial fishing will degrade the canyons and seamounts or the ecosystems within the monument's boundaries. *See* 81 Fed. Reg. at 65,162–63.

64.     The proclamation divided the authority to manage the monument between the Secretaries of Commerce and Interior. The Secretary of Commerce, through the National Oceanic and Atmospheric Administration (the parent agency of the National Marine Fisheries Service), was tasked with managing activities and species within the monument. The Secretary of Interior was tasked with managing the area under her department's statutory authorities. Together, the Secretaries

were directed to prepare a joint management plan within three years and promulgate regulations to protect the monument. 81 Fed. Reg. at 65,164.

65.    Recognizing that the Federal Government's authority to regulate this area is limited by international law, the proclamation forbid the Secretaries from adopting and implementing any regulations which would exceed the Federal Government's authority—even if necessary to protect the monument. In particular, the proclamation forbid the Secretaries from restricting the ships that can pass through the area or the planes that can fly over it or regulating any lawful uses of the high seas. 81 Fed. Reg. at 65,164.

66.    The proclamation directed the Secretaries to specifically prohibit, among other things, the taking or harvesting of any living or nonliving resources within the monument and commercial fishing or the possession of commercial fishing gear. 81 Fed. Reg. at 65,164–65.

67.    The proclamation also allowed the Secretaries, according to their unconstrained discretion, to permit certain activities. These included research and scientific exploration; recreational fishing; commercial fishing with some gear types for red crab, Jonah crab, and lobster, but only for the next seven years; other activities that have no

effect on any resource within the monument; and the construction and maintenance of underwater cables. 81 Fed. Reg. at 65,165.

68.     Proclamation 9496's prohibition against all fishing except for lobster and red crab went into effect in November 2016.

**President Trump Modifies the Northeast Canyons and Seamounts Marine National Monument and Lifts the Commercial Fishing Ban: Proclamation 10049**

69.     Reversing course and giving fishermen some relief, in 2020 President Trump issued a proclamation, "Modifying the Northeast Canyons and Seamounts Marine National Monument," rescinding the commercial fishing ban within the 2016 proclamation. *See* Presidential Proclamation No. 10049, 85 Fed. Reg. 35,793 (June 5, 2020) (Ex. B).

70.     Proclamation 10049 declared that some of the marine resources identified in Proclamation 9496 are not unique to the monument, are not of such scientific interest they merit additional protection, and are protected by other federal laws regulating commercial fishing. 85 Fed. Reg. at 35,794.

71.     Proclamation 10049 specifically noted that,

[A]ppropriately managed commercial fishing would not put the objects of scientific and historic interest that monument protects at risk. Indeed, Proclamation 9496 allows for recreational     fishing     and     further     acknowledges     that

> "[t]hroughout New England, the maritime trades, and
> especially fishing, have supported a vibrant way of life, with
> deep cultural roots and a strong connection to the health of the
> ocean and the bounty it provides.

85 Fed. Reg. at 35,793.

72.    Proclamation 10049 also specifically found that the "highly

migratory" species are "not unique to the monument," and that these

species are already regulated by a "host of other laws enacted after the

Antiquities Act . . . both within and outside the monument." As evidence

supporting this assertion, Proclamation 10049 cited:

> [T]he Endangered Species Act, 16 U.S.C. 1531 *et seq.,* the
> Migratory Bird Treaty Act, 16 U.S.C. 703–712, the National
> Wildlife Refuge System Administration Act, 16 U.S.C. 668dd–
> 668ee, the Refuge Recreation Act, 16 U.S.C. 460k *et seq.*, the
> Marine Mammal Protection Act, 16 U.S.C. 1361 *et seq.*, the
> Clean Water Act, 33 U.S.C. 1251 *et seq.*, the Oil Pollution Act,
> 33 U.S.C. 2701 *et seq.*, the National Marine Sanctuaries Act,
> 16 U.S.C. 1431 *et seq.*, and Title I of the Marine Protection,
> Research and Sanctuaries Act (Ocean Dumping Act), 33
> U.S.C. 1401 *et seq.*

85 Fed. Reg. 35,794.

### President Biden Redesignates the Northeast Canyons and Seamounts Marine National Monument and Reinstitutes the Commercial Fishing Ban: Proclamation 10287

73.    A little over a year later, President Biden issued Proclamation

10287 which redesignates the Northeast Canyons and Seamounts

22

Marine National Monument and reinstitutes the commercial fishing ban within the Monument Designation. *See* Presidential Proclamation No. 10287, 86 Fed. Reg. 57,349 (Oct. 8, 2021) (Ex. C).

74.    Proclamation 10287 largely incorporates Proclamation 9496, including describing two units, the Canyons Unit and Seamounts Unit, which together include approximately 5,000 square miles of Atlantic Ocean. *See* 86 Fed. Reg. at 57,349.

75.    Like Proclamation 9496, Proclamation 10287 provides no factual justification for why this huge section of the Atlantic Ocean is on "land owned or controlled" by the Federal Government.

76.    Proclamation 10287 asserts that the canyons and seamounts, and the "deep-sea, pelagic, and other marine ecosystems they support, and the biodiversity they contain," are "objects of historic and scientific interest" justifying the Monument Designation and its area. 86 Fed. Reg. at 57,349.

77.    Proclamation 10287 specifically cites the "need to protect the canyons, seamounts, and the attendant deep-sea, pelagic, and other marine ecosystems" as justification for the Monument Designation's size as the "smallest area compatible with the proper care and management

of the objects of historic and scientific interest designated for protection[.]" 86 Fed. Reg. at 57,351.

78.    The Proclamation's factual justifications, however, do not include an analysis or any other supporting evidence, other than conclusory statements, for why the Monument Designation's boundaries require approximately 5,000 square miles of Atlantic Ocean to protect the canyons, seamounts, and ecosystems as part of the national monument.

79.    The Proclamation's factual justifications also do not include an analysis or any other supporting evidence, other than conclusory statements, for how commercial fishing will degrade the canyons and seamounts or the ecosystems within the Monument Designation's boundaries. *See* 86 Fed. Reg. at 57,351.

80.    Like Proclamation 9496, Proclamation 10287 divides the authority to manage the monument between the Secretaries of Commerce and Interior. The Secretary of Commerce, through the National Marine Fisheries Service, is tasked with managing activities and species within the monument. The Secretary of Interior is tasked with managing the area under its statutory authorities. Together, the Secretaries are directed to prepare a joint management plan by

September 15, 2023, and to promulgate regulations for the proper care and management of the monument. 86 Fed. Reg. at 57,352.

81.    Proclamation 10287 reinstitutes the prohibition on commercial fishing within the Monument Designation's waters. 86 Fed. Reg. at 57,351–52.

82.    The Proclamation gives warning to "all unauthorized persons not to appropriate, excavate, injure, destroy, or remove any feature of this monument and not to locate or settle upon any lands thereof." 86 Fed. Reg. at 57,353.

83.    The Proclamation also includes a severability clause that provides: "[i]f any provision of this proclamation, including its application to a particular parcel of land, is held to be invalid, the remainder of this proclamation and its application to other parcels of land shall not be affected thereby." 86 Fed. Reg. at 57,353.

84.    On October 18, 2021, Proclamation 10287's prohibition against all fishing in the area except for lobster and red crab went into effect.



Fig. 1: Map of Northeast Canyons and Seamounts Marine National
Monument Credit: NOAA, https://www.fisheries.noaa.gov/new-
england-mid-atlantic/habitat-conservation/northeast-canyons-and-
seamounts-marine-national.

26

## DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS

85.     Both Plaintiffs Mr. Fehily and Mr. Malley have a significant interest in whether Proclamation 10287 or the commercial fishing ban within the Proclamation is illegal.

86.     Mr. Fehily's fishing vessels currently cannot legally fish within the Monument Designation's waters.

87.     Mr. Malley's fishing vessel currently cannot legally fish within the Monument Designation's waters.

88.     But for Proclamation 10287 and its ban on commercial fishing, Mr. Fehily and Mr. Malley would fish within the Monument Designation's waters.

89.     A decision declaring Proclamation 10287 or the Proclamation's commercial fishing ban unlawful will remedy Plaintiffs' injuries by restoring their ability to fish within the Monument Designation's waters.

90.     Unless a permanent injunction is issued to forbid the implementation of Proclamation 10287's fishing ban, Plaintiffs will be irreparably harmed. The fishermen are suffering and will continue to suffer a diminution of income, reduced fishing opportunities, and

depletion of value in their fishing vessels and permits because of Proclamation 10287 and its ban on commercial fishing.

91.    Plaintiffs have no plain, speedy, and adequate remedy at law.

92.    If not enjoined by this Court, Defendants will continue to enforce Proclamation 10287's fishing ban and will adopt regulations further restricting fishing within the Monument Designation's waters.

93.    An actual and substantial controversy exists between Plaintiffs and Defendants over the scope of the President's power to declare national monuments under the Antiquities Act and the President's power to issue legislative rules under the Antiquities Act.

94.    This case is justiciable because Proclamation 10287 is self-executing and immediately forbids Plaintiffs from fishing within the Monument Designation's waters and requires the Secretaries to enforce the Proclamation's ban on commercial fishing.

95.    Declaratory and injunctive relief are thus appropriate to resolve this controversy.

## CLAIMS FOR RELIEF

### Count I:

### *Ultra Vires Executive Action: Designating a National Monument Within an Area That is Not on "Land"* (Antiquities Act, 54 U.S.C. § 320301(a))

96.    All preceding paragraphs are incorporated by reference.

97.    The Antiquities Act places "discernible limits" on the President's power to declare monuments. *See Mountain States Legal Found.*, 306 F.3d at 1136. Courts are thus "obligated to determine whether statutory restrictions have been violated." *Id.*; *cf. Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996) ("The responsibility of determining the limits of statutory grants of authority . . . is a judicial function entrusted to the courts by Congress by the statutes establishing courts and marking their jurisdiction.") (quoting *Stark v. Wickard*, 321 U.S. 288, 310 (1944)); *Franklin v. Massachusetts*, 505 U.S. 788, 828 (1992) (Scalia, J., concurring) ("Review of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive.").

98.    Under the Antiquities Act, the President has the authority to declare national monuments only on "land" owned or controlled by the Federal Government. *See* 54 U.S.C. § 320301(a).

99.    Proclamation 10287 declares as or as part of the Monument Designation the Atlantic Ocean's seabed or floor, beyond the territorial seas, which is not "land" under the Act. It would be unreasonable and contrary to common usage to describe the ocean seabed or ocean floor as "land" under the Act.

100.   Proclamation 10287 thus designates a national monument that exceeds the President's authority under the Antiquities Act and is ultra vires.

## Count II:

### *Ultra Vires Executive Action: Designating a National Monument on Land Not "Owned or Controlled by the Federal Government"* (Antiquities Act, 54 U.S.C. § 320301(a))

101.   All preceding paragraphs are incorporated by reference.

102.   Under the Antiquities Act, the President has the authority to declare national monuments only on land "owned or controlled by the Federal Government." 54 U.S.C. § 320301(a).

103.    The ordinary meaning of the term "controlled" under the Act means more than limited regulatory authority and does not extend to ocean areas where the United States has authority of "limited scope"— including beyond the territorial sea. *See Treasure Salvors, Inc.*, 569 F.2d at 340 (holding that the Antiquities Act does not apply to a shipwreck beyond the Nation's territorial sea). To conclude that mere limited control is sufficient would produce the absurd result of allowing designation of any land, including private land, within the mere regulatory jurisdiction of the United States, thereby rendering idle the statute's limitation to land "owned or controlled" by the Federal Government.

104.    Accordingly, the only reasonable interpretation of "owned or controlled," as that phrase is used in the Act, is that the phrase requires the Federal Government to exercise pervasive authority over lands it controls like the authority it enjoys over the lands it owns. This does not require absolute authority but does require the Federal Government to exercise general regulatory authority over the land that is not limited by, for example, other sovereigns' authority, such as the authority that the Federal Government possesses in the territories and in federal enclaves. *Cf.* U.S. Const. Art. I, § 8, cl. 17; Art. IV, § 3, cl. 2.

105.    Proclamation 10287 designates as a national monument an area of the Atlantic Ocean within the EEZ, which is beyond the territorial seas and where the Federal Government only exercises regulatory authority of a limited scope. The Monument Designation is therefore not in an area "owned or controlled by the Federal Government" within the Act's ordinary meaning.

106.    Proclamation 10287 thus designates a national monument that exceeds the President's authority under the Antiquities Act and is ultra vires.

## Count III:

### *Ultra Vires Executive Action: Designating "Objects" Not Protectable Under the Antiquities Act* (Antiquities Act, 54 U.S.C. § 320301(a))

107.    All preceding paragraphs are incorporated by reference.

108.    Under the Antiquities Act, the President has the authority to declare only "historic landmarks, historic and prehistoric structures, and other objects of historic or scientific interest" as national monuments. 54 U.S.C. § 320301(a).

109.    Neither "ecosystems" nor the "biodiversity" contained within them are historic landmarks, historic or prehistoric structures, or objects

of historic or scientific interest under the Antiquities Act. Such "objects" must be physical "objects of antiquity" that have historic or scientific interest.

110.    This ordinary meaning of "object" is confirmed by the words preceding the phrase "object of historic or scientific interest." When a statutory term can have a broad or narrow meaning, the surrounding words provide crucial contextual clues about the word's ordinary meaning. *See, e.g.*, *Yates v. United States*, 574 U.S. 528, 529 (2015) (holding that fish are not "tangible objects" under the Sarbanes-Oxley Act because of the financial context of the statute). The phrase "objects of historic or scientific interest" follows "historic landmarks" and "historic and prehistoric structures." This ordering shows that Congress sought to protect discrete physical "objects of antiquity"—not amorphous ecosystems or the biodiversity within them. Ecosystems and biodiversity are qualities or functions of objects, not themselves objects of antiquity.

111.    Proclamation 10287 designates "objects" as, or as part of, a national monument exceeding the President's authority under the Antiquities Act. Proclamation 10287 is thus ultra vires.

## Count IV:

### *Ultra Vires Executive Action: Designating Land as Part of a National Monument That is not the Smallest Area Compatible with the Care and Management of the Objects to be Protected* (Antiquities Act, 54 U.S.C. § 320301(b))

112.    All preceding paragraphs are incorporated by reference.

113.    Under the Antiquities Act, the President has only the authority to reserve parcels of land as part of a national monument if that land is "the smallest area compatible with the proper care and management of the objects to be protected." 54 U.S.C. § 320301(b).

114.    Proclamation 10287 cites "ecosystems" and the "biodiversity" contained within them as the factual justification for the Monument Designation's expansive size. But "ecosystems" and "biodiversity" are not objects of historic and scientific interest under the Antiquities Act and thus cannot be used as a factual justification for the Monument Designation's size as "the smallest area compatible with the proper care and management of the objects to be protected."

115.    Thus, because Proclamation 10287 uses "objects" that cannot be declared as, or as part of, a national monument under the Act as justification for the Monument Designation's size, the Monument

Designation necessarily cannot satisfy the Antiquities Act's "smallest area compatible" requirement.

116.   Proclamation 10287 also provides no reasoned factual justification, based on any analysis or any other supporting evidence, other than conclusory statements, for why the Monument Designation's boundaries require approximately 5,000 square miles of Atlantic Ocean to protect the canyons, seamounts, and ecosystems as part of the national monument. Thus, even if "ecosystems" and the "biodiversity" within them are "objects of historic and scientific interest" under the Antiquities Act, the Proclamation is still ultra vires.

### Count V:

### *Ultra Vires Executive Action and Violation*
### *of the Constitution's Separation of Powers*
### (U.S. Const. art. I)

117.   All preceding paragraphs are incorporated by reference.

118.   Under the Constitution's Separation of Powers, only Congress may exercise legislative power. *See* U.S. Const. art. I ("All legislative Powers herein granted shall be vested in a Congress of the United States.")

119.    The Executive Branch is vested with the power to execute the law as Congress has prescribed by statute. *See Panama Refining Co. v. Ryan*, 293 U.S. 388, 418–19 (1935) (The President may not exercise Congress's legislative power to declare entirely "what circumstances … should be forbidden" by law.)

120.    When Congress does not delegate to the President the authority to act, his power is at its weakest. "When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637–38 (1952) (Jackson, J., concurring). Courts are thus required to scrutinize presidential action when there is no delegation from Congress. *See NLRB v. Noel Canning*, 573 U.S. 513, 570–71 (2014) (Scalia, J., concurring); *see also James B. Beam Distilling Co. v. Georgia*, 501 U.S 529, 549 (1991) (Scalia, J., concurring) ("The Executive . . . has no power to bind private conduct in areas not specifically committed to his control by Constitution or statute[.]").

121.    Under the Antiquities Act, the President has only the authority to declare national monuments and the authority to reserve public land to protect a national monument. *See* 54 U.S.C. § 320301(a)–(b).

122.    Congress did not delegate to the President the power to issue binding rules of private conduct under the Antiquities Act, such as the power to ban commercial fishing within a national monument's designated area.

123.    Congress has specifically delegated to the Secretary of Interior, Secretary of Agriculture, and Secretary of the Army the authority to make uniform regulations to implement the Act. *Id.* § 320303.

124.    Congress has also directly delegated to the Secretary of Commerce the authority to designate and protect areas of the marine environment with special significance due to their conservation, recreational, ecological, historical, scientific, cultural, archeological, educational, or esthetic qualities as national marine sanctuaries. *See* 16 U.S.C. § 1431, *et seq*. Under this statute, Congress delegated to the Secretary of Commerce, not to the President, the power to issue

legislative regulations to protect marine environments from certain activities. *See id.* § 1439.

125.    Proclamation 10287's ban on commercial fishing thus is outside of the President's authority under the Antiquities Act, is ultra vires, and constitutes unlawful lawmaking in violation of the Constitution's Separation of Powers.

## REQUESTED RELIEF

Plaintiffs Mr. Fehily and Mr. Malley request the following relief:

1.    Entry of a declaratory judgment that:

a. Presidential Proclamation 10287 is an ultra vires executive action under the Antiquities Act § 320301(a) because the Monument Designation is not on "land" under the Act;

b. Presidential Proclamation 10287 is an ultra vires executive action under the Antiquities Act § 320301(a) because the Monument Designation is not on land "owned or controlled" by the Federal Government;

c. Presidential Proclamation 10287 is an ultra vires executive action under Antiquities Act § 320301(a) because "ecosystems" and

"biodiversity" are not "objects of scientific or historical interest" that can be designated as, or as part of, a national monument;

d. Presidential Proclamation 10287 is an ultra vires executive action under Antiquities Act § 320301(b) because the Monument Designation's area is not the "the smallest area compatible with the proper care and management of the objects to be protected";

e. The portion of Presidential Proclamation 10287 banning commercial fishing within the Monument Designation's area is an ultra vires executive action and violates the Constitution's Separation of Powers because Congress did not delegate the President the power to proscribe private rights or conduct, including commercial fishing, in the Act;

2. Entry of a permanent injunction against Defendants, their agents, representatives, and employees from enforcing or giving effect to Presidential Proclamation 10287;

3. Entry of a permanent injunction against Defendants, their agents, representatives, and employees, from enforcing or giving effect to Presidential Proclamation 10287's commercial fishing ban;

4.     An award of Mr. Fehily's and Mr. Malley's reasonable attorneys' fees, costs, and expenses under 28 U.S.C. § 2412, or any other authority; and

5.     An award of any further relief this Court deems just and proper.

DATED: April 12, 2022.

Respectfully submitted,

DAMIEN M. SCHIFF*               /s/ Jonathan Houghton
Cal. Bar No. 235101             JONATHAN HOUGHTON
Pacific Legal Foundation        N.J. Bar No. 369652021
555 Capitol Mall, Suite 1290    3100 Clarendon Blvd., Suite 610,
Sacramento, California 95814    Arlington, VA 22201
DSchiff@pacificlegal.org        JHoughton@pacificlegal.org
Telephone: (916) 419-7111       Telephone: (202) 888-6881

FRANK D. GARRISON*
IN Bar No. 34024-49
PAIGE E. GILLIARD*
Cal. Bar No. 330051
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 610
Arlington, Virginia 22201
FGarrison@pacificlegal.org
PGilliard@pacificlegal.org
Telephone: (202) 888-6881

*Pro Hac Vice Forthcoming

Counsel for Plaintiffs

40

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I, Jonathan Houghton, hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: April 12, 2022.                    /s/ Jonathan Houghton
                                          Jonathan Houghton